THOMAS J. REHM, PLAINTIFF v. LYNNE BARRETT REHM, DEFENDANT

No. 9012DC1297

(Filed 5 November 1991)

## 1. Divorce and Separation § 30 (NCI4th) — separation agreement — alimony — terminated upon cohabitation

There was sufficient evidence to support the trial judge's conclusion that defendant had cohabited with someone of the opposite sex and that plaintiff's obligation to pay alimony under a separation agreement incorporated into a divorce decree had terminated where the court found that defendant had begun a relationship with a member of the opposite sex, Mr.

REHM v. REHM

[104 N.C. App. 490 (1991)]

Blashfield, and had become intimate with him; Blashfield stayed in defendant's house as many as five nights a week, although he maintained a separate residence; he was observed on two occasions spending the night at defendant's home, leaving in different clothes from the night before, and kissing defendant good-bye at the front porch prior to getting into his own car and driving away; Blashfield and defendant took trips together lasting more than one day, often including the minor child; and defendant and Blashfield have an exclusive, monogamous relationship for both sexual and regular domestic purposes.

**Am Jur 2d, Divorce and Separation § 850.5.**

**Divorced or separated spouse's living with member of opposite sex as affecting other spouse's obligation of alimony or support under separation agreement. 47 ALR4th 38.**

2. **Appeal and Error § 106 (NCI4th) — alimony — contempt — obligation terminated — immediately appealable**

An order holding that plaintiff was not in contempt and terminating his obligation to pay alimony affected a substantial right of defendant and was appealable.

**Am Jur 2d, Appeal and Error §§ 168-170; Contempt § 45.**

APPEAL by defendant from order entered 31 October 1990 by *Judge James Floyd Ammons, Jr.,* in CUMBERLAND County District Court. Heard in the Court of Appeals 29 August 1991.

Plaintiff and defendant entered into a Separation Agreement 7 February 1989 and were granted a divorce 25 January 1990, with the separation agreement being incorporated by reference into the final decree. The "Contract of Separation and Property Settlement Agreement" provided that defendant shall receive alimony payments beginning January 1989, and the payments "shall continue until the first to occur of the following events: (i) the death of wife, (ii) the remarriage of wife, (iii) the death of husband, (iv) the passing of thirty six (36) months, or *if the wife cohabits with someone of the opposite sex.*" (Emphasis added.)

In June 1990 plaintiff ceased paying alimony, and on 23 July 1990 defendant filed a motion in the cause for recovery of the sum due, praying that defendant be adjudged in willful contempt of court. That same day, an order to show cause was issued against plaintiff. On 13 October 1990, an order was entered denying defend-

ant's motion in the cause for contempt and ordering that plaintiff's obligation to pay alimony be terminated.

From this judgment, defendant appeals.

*Beaver, Holt, Richardson, Sternlicht, Burge & Glazier, P.A., by F. Thomas Holt, III, for plaintiff-appellee.*

*Blackwell, Strickland & Luedeke, P.A., by John V. Blackwell, Jr., and Kenneth D. Burns, for defendant-appellant.*

ORR, Judge.

[1] The basic issue for our determination is whether the trial court erred in determining that defendant cohabited with someone of the opposite sex. For the reasons below, we affirm the order of the trial court.

> It is well settled that in contempt proceedings the trial court's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment. The trial court is not required to make separate conclusions of law.

*Glesner v. Dembrosky*, 73 N.C. App. 594, 597, 327 S.E.2d 60, 62 (1985) (citations omitted).

The trial court stated in its findings of fact:

6. Beginning in November, 1989, the Defendant herein began having a relationship with a member of the opposite sex namely, Matthew Blashfield. Thereafter, Defendant became intimate with Mr. Blashfield and had sexual relations with him. Defendant has had sexual relations with no other person other than Mr. Blashfield since they met in November, 1989, and Defendant continues to have sexual relations with Blashfield and he has been a guest in her home as many as five times per week.

7. The relationship between Mr. Blashfield and Defendant existed to the extent whereby Defendant allowed Mr. Blashfield to stay at her house over night as many as five times per week; on at least two occasions during the time period beginning January 1 until June of 1990, Mr. Blashfield was observed spending the night at the Defendant's home, leaving the Defendant's home dressed in different clothes than he was ob-

served wearing the previous night; kissing the Defendant good-bye at the front porch prior to getting into his own car, and driving away. Defendant and Mr. Blashfield have taken trips together lasting for more than one day and have often included the minor child.

8. Defendant and Mr. Blashfield have an exclusive, monogamous relationship for both sexual and regular domestic purposes.

9. Defendant testified Mr. Blashfield maintained a separate residence.

Then the trial court concluded that "the Defendant has cohabited with someone of the opposite sex and therefore Plaintiff's obligation to pay alimony has terminated." The trial court then ordered that plaintiff was not in contempt of the prior orders and that his obligation to pay alimony was terminated.

Cohabitation is defined as: "To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations." Black's Law Dictionary 236 (5th ed. 1979). In *Young v. Young*, 225 N.C. 340, 34 S.E.2d 154 (1945), where defendant alleged intrinsic fraud in procuring a judgment of divorce on the grounds of false and fraudulent allegations of separation by mutual agreement, the Court stated: "Separation means cessation of cohabitation, and cohabitation means living together as man and wife, though not necessarily implying sexual relations." *Id.* at 344, 34 S.E.2d at 157. In *Dudley v. Dudley*, 225 N.C. 83, 33 S.E.2d 489 (1945), where the question presented was whether the parties had lived separate and apart for two years, the Court stated:

Cohabit, according to Winston's Dictionary, Encyclopedia Edition (1943), means: "To live together as man and wife; usually, though not necessarily, implying sexual intercourse." Black's Law Dictionary, Third Edition, defines the meaning of cohabitation, as: "Living together, living together as man and wife; sexual intercourse." Cohabitation includes other marital duties besides marital intercourse.

*Id.* at 85-86, 33 S.E.2d at 490-91.

"The trial court, when sitting as a trier of fact, is empowered to assign weight to the evidence presented at trial as it deems

appropriate." *G.R. Little Agency, Inc. v. Jennings*, 88 N.C. App. 107, 112, 362 S.E.2d 807, 811 (1987). Here we conclude that the trial court did not err in determining defendant cohabited with someone of the opposite sex, thereby terminating plaintiff's obligation to pay alimony. There was sufficient evidence of record to support the findings of fact and adequate findings of fact to support the trial court's conclusions of law.

[2] Plaintiff also argues that the trial court's order holding plaintiff not in contempt and terminating plaintiff's obligation to pay alimony is not appealable. Terminating plaintiff's obligation to pay alimony affects a substantial right of defendant, and therefore the order is appealable. *See Piedmont Equipment Co. v. Weant*, 30 N.C. App. 191, 226 S.E.2d 688 (1976) (an order dismissing a charge of indirect civil contempt is appealable where there was no other proceeding by which plaintiff could enforce its rights, thereby affecting a substantial right).

Affirmed.

Judges COZORT and LEWIS concur.