McGEE, Chief Judge.
Charles N. Davis, Jr. ("Defendant") appeals from an order requiring him to pay $1,500.00 per month in alimony to his former wife, Shelia M. Davis ("Plaintiff"). Defendant argues the trial court erred in finding that Plaintiff was not cohabitating with her boyfriend, John Schermerhorn ("Schermerhorn"). Alternatively, Defendant argues the trial court erred in calculating the amount of alimony that he must pay to Plaintiff. We conclude that the trial court did not err in its findings of fact or conclusions of law, and we therefore affirm the trial court's order.
I. Background
Plaintiff and Defendant were married on 4 June 1997. No children were born of the marriage, and the parties separated on 23 December 2012. After their separation, Plaintiff moved to Florida in January 2013. Plaintiff met Schermerhorn, who also lived in Florida, on an online dating website around January 2014. Defendant employed Cecile Garrett ("Garrett"), a private investigator, to follow Plaintiff and observe her interactions with Schermerhorn. Between April 2014 and April 2015, Garrett observed Plaintiff and Schermerhorn-both in person and through the use of GPS tracking-spend many nights together at each other's residences. During the first 198 days of the investigation, Garrett found that Plaintiff and Schermerhorn were involved in one another's lives for 143 of those days. Garrett observed Plaintiff and Schermerhorn going out to eat, going to the grocery store together, playing golf together, and generally holding themselves out as a couple.
Plaintiff filed a complaint for divorce, post-separation support, alimony, equitable distribution, and attorney's fees on 19 March 2013. Defendant filed an answer and counterclaim for equitable distribution on 21 May 2013. The matters were heard on Plaintiff's claim for alimony, and an order was entered 3 May 2016. In that order, the trial court found, inter alia , that "Plaintiff and [ ] Schermerhorn are not co-habitating, nor have they been at any relevant time period herein." The trial court concluded as a matter of law that Plaintiff was "actually and substantially dependent upon [Defendant] for her support and maintenance," and ordered Defendant to pay Plaintiff $1,500.00 per month in alimony for a period of four years and ten months. Defendant appeals.
II. Analysis
Defendant argues the trial court erred by: (1) making several findings of fact not supported by competent evidence; (2) concluding Plaintiff was not cohabitating with Schermerhorn; and (3) failing to consider certain facts when calculating alimony Defendant must pay to Plaintiff.
A. Challenged Findings of Fact
Defendant argues that several of the trial court's findings of fact are not supported by substantial evidence in the record, and that others are more appropriately labeled conclusions of law to which this Court is not bound. When a trial court sits without a jury, our review is "strictly limited to determining whether the record contains competent evidence to support the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law." Smallwood v. Smallwood , 227 N.C. App. 319, 327, 742 S.E.2d 814, 820 (citation and internal quotation marks omitted). It is not enough
that there may be evidence in the record sufficient to support findings which could have been made. The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine de novo the weight and credibility to be given to evidence disclosed by the record on appeal.
Coble v. Coble , 300 N.C. 708, 712-13, 268 S.E.2d 185, 189 (1980). Findings of fact that are not challenged are binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
In the present case, Defendant challenges findings of fact 35, 38, 39, and 40 as not supported by competent evidence in the record. These challenged findings of fact state:
35. The [c]ourt finds that, although [Plaintiff] and [ ] Schermerhorn spent numerous nights together, it was always at the express or implied invitation of one or the other, and not as a voluntary assumption of the rights, duties and obligations usually manifested by married people. [Plaintiff] and [ ] Schermerhorn have never spent any extended time at the home of the other without the other person being there.
....
38. Plaintiff does not receive mail at [ ] Schermerhorn's home, nor does he at her home. Between Plaintiff and [ ] Schermerhorn, neither party has clothing at the home of the other.
39. [ ] Schermerhorn makes no financial contributions to [Plaintiff's] living expenses and does not pay for anything for [Plaintiff] except occasions when they play golf together he has paid her green fee and on occasions when they go out he has bought dinner, as a dating couple might do. [ ] Schermerhorn has never purchased food to supply Plaintiff's kitchen, except for one occasion when he bought groceries for Plaintiff and he was reimbursed by Plaintiff.
40. During the time period that Defendant's private investigator was watching [Plaintiff], and during the period of time that Defendant contends that [Plaintiff] was co-habitating, [Plaintiff] was seen with several other different male individuals than [ ] Schermerhorn.
We find each of the challenged findings of fact to be supported by competent evidence in the record.
As to finding of fact 35, Plaintiff testified she met Schermerhorn in January 2014, and she stayed at Schermerhorn's house "several nights" when they first started dating so as to ensure she did not drink and drive. According to Plaintiff's testimony, Schermerhorn would stay at her residence on occasion, but he "never" kept his belongings there and did not contribute to the expenses of her residence, such as rent and utilities. Plaintiff testified she and Schermerhorn did not comingle expenses, and did not "act like a married couple."
Plaintiff further testified that, while she could not recall the exact dates, she did stay at Schermerhorn's residence "on occasion," but would keep a change of clothes in her car or would stop by her own residence the next morning to change. Plaintiff also testified that "[Schermerhorn] doesn't enter [her] house unless [she is] there," and that she "will not enter his house if he's not there, unless he's out of town" and Plaintiff was checking on Schermerhorn's house at his request. We hold that this testimony is competent evidence to support finding of fact 35. Defendant argues that the trial court "made what is essentially a conclusion of law by stating that this 'express or implied' provision renders the time spent together something other than evidence of [Plaintiff] and [Schermerhorn] cohabitating." We disagree. Plaintiff's testimony that she would only enter Schermerhorn's house at his request, and conversely that he would only enter Plaintiff's house at her request, supports the trial court's finding that an "express or implied invitation" was required before Plaintiff and Schermerhorn would spend the night together. Because finding of fact 35 is supported by competent evidence, it is binding on appeal. Smallwood , 227 N.C. App. at 327, 742 S.E.2d at 820.
As to finding of fact 38, Plaintiff testified she did not receive mail at Schermerhorn's home, and had never received mail there. Plaintiff further testified that Schermerhorn had never received any mail at her home. Defendant's private investigator, Garrett, testified that he found discarded mail addressed to Plaintiff in Schermerhorn's trash bin on two occasions. In both of those instances, however, the offending mail was addressed to Plaintiff at her home address, not Schermerhorn's. Plaintiff testified that she likely disposed of her mail at Schermerhorn's home once or twice if she checked her mail on the way to his house and, therefore, had it with her when she arrived. Garrett testified that he saw Plaintiff checking her mail before traveling to Schermerhorn's on several occasions. Further, Garrett testified that he executed "trash pulls" at Plaintiff's residence and found no mail or trash belonging to Schermerhorn.
Plaintiff also testified she did not keep property at Schermerhorn's home, other than what she would need for spending the night. Plaintiff testified that Schermerhorn did not keep any property at her home, other than what he would need to stay overnight. We hold that this testimony by Plaintiff and Garrett serves as competent evidence to support the trial court's finding of fact 38, which is therefore binding on appeal. Smallwood , 227 N.C. App. at 327, 742 S.E.2d at 820.
As to finding of fact 39, Plaintiff testified that Schermerhorn has never paid her "power bill ... [her] phone bill ... [her] cable bill .. [or] any utilities whatsoever." Plaintiff testified that, likewise, she had never paid for any of Schermerhorn's bills, nor had they ever shared a joint bank account. Garrett testified that he had never seen Schermerhorn "buy [Plaintiff] a meal ... buy her clothes ... buy her shoes ... buy her jewelry ...[, or] pay any of her bills," and had never seen Plaintiff "pay any of [Schermerhorn's] bills ... buy his dinner ... buy his movie ticket ... buy his shoes, clothes, [or] anything like that." Plaintiff testified that when she and Schermerhorn played golf together, they rotated who paid for the green fees, as well as when they went out to eat or buy groceries, they rotated who paid so that the purchases evened out.
According to Garrett's testimony there was one instance, on 17 March 2015, when he observed Plaintiff and Schermerhorn in a grocery store together. Garrett testified that Schermerhorn purchased items which they then took back to Plaintiff's residence. According to Plaintiff, she did not have money with her when shopping at the grocery store, and later repaid Schermerhorn for this purchase. Defendant argues that "no payment [being] exchanged for food or rent to stay at the other's residence; ... Plaintiff tak[ing] care of Schermerhorn's residence when he [was] out of town; [and] Schermerhorn assist[ing] with household repairs for [ ] Plaintiff" constitutes substantial evidence that Schermerhorn made financial contributions to Plaintiff's expenses. We do not agree. Plaintiff's testimony that she and Schermerhorn shared the expenses when they went out together and engaged in activities together, "as a dating couple might do," is competent evidence that there was no financial gain on Plaintiff's part that resulted from her relationship with Schermerhorn. This is competent evidence to support finding of fact 39 and, as such, this finding of fact is binding on appeal. Smallwood , 227 N.C. App. at 327, 742 S.E.2d at 820.
As to finding of fact 40, Garrett testified that "[d]uring the course of [his] investigation, [Plaintiff] was photographed in embrace with a John Scott Buschell ... embrac[ing] ... an unknown male at [a different time] ... and ... with [a third man,] Thomas Teagle" on a different occasion. Defendant argues because these instances were not qualified as "romantic, platonic, or otherwise" they do not "impugn the monogamy of Plaintiff's relationship with ... Schermerhorn." Finding of fact 40 does not "impugn the monogamy" of Plaintiff and Schermerhorn; the finding merely states that Defendant's private investigator observed Plaintiff "with several ... different male individuals [other] than [ ] Schermerhorn." Finding of fact 40 is clearly supported by competent evidence and is, therefore, binding on appeal. Smallwood , 227 N.C. App. at 327, 742 S.E.2d at 820.
Defendant also contends that findings of fact 34 and 41 are more appropriately labeled conclusions of law. Finding of fact 34 states that "[Plaintiff] and ... Schermerhorn[ ] are not and have not been co-habitating as that term is used in the alimony statute," and finding of fact 41 states that "Plaintiff and [ ] Schermerhorn are not co-habitating, nor have they been at any relevant time period[.]" We agree with Defendant that both of these findings are more appropriately labeled conclusions of law. We therefore treat them as such, and are not bound by finding of fact 34 or 41. Gainey v. N.C. Dept. of Justice , 121 N.C. App. 253, 257 n.1, 465 S.E.2d 36, 40 n.1 (1996) ; see also In re M.R.D.C. , 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004) ("We note that, if a finding of fact is essentially a conclusion of law it will be treated as a conclusion of law which is reviewable on appeal." (citations, quotation marks, brackets, and ellipses omitted)).
B. Cohabitation Pursuant to N.C. Gen. Stat. § 50-16.9
Defendant argues the trial court erred in concluding as a matter of law that Plaintiff was not cohabitating with Schermerhorn. "The trial court's conclusions of law ... are reviewed de novo on appeal." Smallwood , 227 N.C. App. at 322, 742 S.E.2d at 817. Pursuant to N.C. Gen. Stat. § 50-16.9(b), cohabitation is defined as
the act of two adults dwelling together continuously and habitually in a private heterosexual relationship, even if this relationship is not solemnized by marriage, or a private homosexual relationship. Cohabitation is evidenced by the voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, and which include, but are not necessarily dependent on, sexual relations. Nothing in this section shall be construed to make lawful conduct which is made unlawful by other statutes.
N.C. Gen. Stat. § 50-16.9 (2015). A finding of cohabitation on the part of a dependent spouse receiving post-separation support or alimony would result in termination of such support. Id. To find cohabitation there must be evidence of "(1) a dwelling together continuously and habitually of two adults and (2) a voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people." Bird v. Bird , 363 N.C. 774, 779-80, 688 S.E.2d 420, 423 (2010) (citations and internal quotations omitted). When there is conflicting objective evidence on the issue of cohabitation, "the parties' 'subjective intent' can be considered." Bird , 363 N.C. at 782, 688 S.E.2d at 424 (citation omitted).
Defendant argues the trial court's findings of fact are insufficient to support its conclusion of law that Plaintiff was not engaged in cohabitation with Schermerhorn. We disagree. The binding findings of fact provide that Plaintiff began dating Schermerhorn sometime after separating from Defendant. Plaintiff at all times maintained her own residence, "for which she pa[id] rent and utilities." "[A]lthough [ ] Plaintiff and [ ] Schermerhorn spent numerous nights together, it was always at the express or implied invitation of one or the other[.]" Plaintiff and Schermerhorn did not hold themselves out to be married, did not comingle their bank accounts or expenses, and did not keep clothing at the other's separate residence. These findings, which we have found to be supported by competent evidence, support the trial court's conclusion of law that Plaintiff and Schermerhorn were not "dwelling together continuously and habitually in a private heterosexual relationship." N.C.G.S. § 50-16.9.
Defendant relies on this Court's decision in Rehm v. Rehm , 104 N.C. App. 490, 409 S.E.2d 723 (1991) to support his argument that the trial court erred in concluding that Plaintiff and Schermerhorn were not cohabitating. In Rehm , this Court upheld the trial court's conclusion of law that a wife was cohabitating with another man based on findings of fact that
(1) the wife and the man she was dating maintained an "exclusive, monogamous relationship for both sexual and regular domestic purposes"; (2) while the man maintained a separate residence, he spent the night at the wife's house as many as five nights a week; (3) the man was seen leaving the wife's home dressed in clothes different from those he had been wearing the previous day; (4) the couple was seen kissing each other goodbye; and (5) the couple had taken overnight trips together, which often included the wife's child.
Smallwood , 227 N.C. App. at 327, 742 S.E.2d at 820 (citing Rehm , 104 N.C. App. at 492-93, 409 S.E.2d at 724 ). Defendant likens the facts of the present case to the facts of Rehm . However,
[D]efendant's argument fails to take into account the standard of review employed by this Court in reviewing orders entered by trial courts in non-jury proceedings. We do not engage in a de novo review of the evidence and substitute our judgment for that of the trial court. Instead, our review is "strictly limited" to determining whether the record contains competent evidence to support the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. Contrary to [D]efendant's suggestion, Rehm does not stand for the proposition that the presence of those specific facts found by the trial court in that case will necessarily mandate a finding of cohabitation. Instead, our ruling was based on the fact that competent evidence existed in the record to support the trial court's findings, and ultimate determination, on the cohabitation issue in that case.
Id. Indeed, unlike in the present case, the trial court in Rehm specifically found that the parties' subjective intent in sleeping in the same house most nights, notwithstanding that they each owned a separate house, was to establish a residence together, finding that they did so "for both sexual and regular domestic purposes." Id. at 493, 409 S.E.2d at 724. As we have held, the trial court's findings of fact are supported by competent evidence, and those findings of fact support the trial court's conclusion of law that Plaintiff was not cohabitating with Schermerhorn.
C. Calculation of Alimony
Defendant argues the trial court erred in calculating the amount of alimony due to Plaintiff. "Whether a spouse is entitled to an award of alimony or post-separation support is a question of law." Collins v. Collins , --- N.C. App. ----, ----, 778 S.E.2d 854, 856 (2015) (citation omitted). A question of law is fully reviewable on appeal. Clark v. Clark , 301 N.C. 123, 135-36, 271 S.E.2d 58, 67 (1980). However, a "trial court's determination of the amount of alimony is reviewed for an abuse of discretion." Collins , --- N.C. App. at ----, 778 S.E.2d at 856 (citing Quick v. Quick , 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982) ). A ruling made in the trial court's discretion is accorded significant deference. White v. White , 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Only when a trial court's decision is "manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision," can there be a finding of an abuse of discretion. Collins , --- N.C. App. at ----, 778 S.E.2d at 856.
Defendant contends the trial court abused its discretion in calculating the amount of alimony Defendant was ordered to pay to Plaintiff because the trial court failed to take into account certain income earned by Plaintiff. The trial court made the following findings of fact in relation to the award and calculation of alimony:
16. The [c]ourt has considered the amount and sources of all income of the parties including earnings, dividends, medical insurance, rents, retirement ... and all other sources and has also considered the distribution of property in the equitable distribution proceeding.
....
28. Per Defendant's exhibit 38, Defendant contends that Plaintiff's monthly shortfall is $852.61. The [c]ourt finds this is not sufficient to meet the needs of [ ] Plaintiff.
....
30. The [c]ourt finds that [ ] Plaintiff's reasonable monthly expenses are at least $4,000.00 even after deleting or adjusting many expenses from her affidavit which showed her monthly expenses to be approximately $5,737.00.
31. Plaintiff is in need of at least $1,500.00 per month in alimony from [ ] Defendant.
(emphasis added). Defendant has not challenged these findings of fact, and they are therefore binding on appeal. In re P.M. , 169 N.C. App. 423, 424, 610 S.E.2d 403, 404 (2005). Defendant simply contends there was not an explicit finding of fact regarding the amount of rental income received by Plaintiff, and Defendant "provided calculations showing" that when the rental income earned by Plaintiff was taken into account, Plaintiff would require a lower amount of alimony.
We hold the trial court did not abuse its discretion in ordering Defendant to pay Plaintiff $1,500.00 per month in alimony. The trial court noted that it considered "the amount and sources of all income of the parties including ... rents." The trial court also specifically listed Defendant's contention that "Plaintiff's monthly shortfall" was only "$852.61," and then disagreed, finding Plaintiff was "in need of at least $1,500.00 per month[.]" It is well-established that "when the trial court is the trier of fact, the court is empowered to assign weight to the evidence presented at the trial as it deems appropriate." Brackney v. Brackney , 199 N.C. App. 375, 390, 682 S.E.2d 401, 410 (2009). It is clear that the trial court considered the relevant evidence, and determined that Plaintiff was in need of $1,500.00 per month in alimony despite Defendant's contentions to the contrary. The trial court did not abuse its discretion in so finding.
III. Conclusion
All of the trial court's challenged findings of fact were supported by competent evidence in the record, and supported the trial court's conclusion of law that Plaintiff did not cohabitate with Schermerhorn. Further, the trial court did not abuse its discretion in calculating the amount of alimony Defendant was required to pay to Plaintiff. We affirm the order of the trial court.
AFFIRMED.
Report per Rule 30(e).
Judge DILLON concurs.
Judge TYSON concurs in result only.